# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3492

_____

| | | |
|---|---|---|
| Nancy J. Wingate, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Gage County School District, No. | * | District of Nebraska. |
| 34, also known as Freeman Public | * | |
| Schools; John T. Brazell, Individually | * | |
| and in his capacity as Superintendent | * | |
| of Freeman Public Schools, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: March 27, 2008
Filed:  June 16, 2008

_____

Before RILEY, BEAM, and MELLOY, Circuit Judges.

_____

BEAM, Circuit Judge.

Nancy J. Wingate, a part-time teacher for the Gage County School District No. 34 (the "District"), brought an age-discrimination action under the Age Discrimination in Employment Act (ADEA) and two First Amendment claims pursuant to § 1983, against the District and its superintendent, John T. Brazell (together "the

Defendants"). The Defendants moved for summary judgment and the district court[1] granted their motion. Wingate now appeals. We affirm.

## I.    BACKGROUND

Wingate is currently sixty years old. She has a master's degree in education and started working for the District in 1969, as a full-time teacher. Some time in either 1976 or 1977, Wingate switched to a part-time schedule. As a part-time teacher, Wingate worked eight hours a day, three times a week.

In July 2000, the District hired Brazell. Soon after, Brazell switched Wingate's schedule to five hours a day, five days a week. He also offered Wingate an additional part-time position as a Title I paraeducator.[2] Brazell offered Wingate this position in an attempt to accommodate her request for additional work. Wingate accepted the paraeducator position, and began working as both a part-time teacher and part-time paraeducator.

Some time in 2001, Wingate decided to return to a full-time teaching position. Over the course of approximately three years–from 2001 to 2004–Wingate applied for four different teaching positions with the District. Wingate first applied for a full-time elementary teaching position in April 2001. According to Brazell, a successful job candidate had to perform coaching duties. Wingate, however, contends that she does not remember the job advertisements mentioning coaching. The District filled this position with Karla Benson, a thirty-three-year-old female. Benson had a coaching

---

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

[2]The District received a Title I school-improvement grant. This grant provided short-term limited funding for the District. The District used this grant money to hire Wingate as a part-time paraeducator. The District discontinued this position when the Title I grant ended.

endorsement, had worked previously with the District as a paraeducator, and had strong recommendations.

In the fall of 2004, Wingate applied for two more full-time teaching positions. The District did not interview Wingate for either position. Brazell contends that he did not interview Wingate for either of these positions because she was only an average teacher, had trouble handling large groups of students, and the District would have had to hire a replacement to fill Wingate's part-time position. For one of the two positions, the District hired Kary Archer, a twenty-eight-year-old female. Like Wingate, Archer had a master's degree in education; however, she also had an endorsement in special education. Additionally, Archer had taught special education for several years and had experience in an elementary classroom in a district that promoted high student numbers per classroom (i.e., she had a proven ability to handle a large class of students). Archer also had strong recommendations. The District filled the second position with Stephanie Klassen, a thirty-one-year-old female. Klassen had experience teaching in an inner-city school in California. She also had experience teaching students with behavioral problems, which many first-grade students in the District demonstrated.

The last position Wingate applied for consisted of a half-time elementary position and a half-time special education position. The District only interviewed applicants with (or who would soon hold) a special education endorsement. Wingate neither had such an endorsement nor was in the process of obtaining one, and was therefore not interviewed.

After the District rejected Wingate's four applications for full-time employment, she filed suit. She alleged that the Defendants refused to hire her because of her age and the exercise of her First Amendment rights of free speech and free association. The Defendants moved for summary judgment on each of Wingate's claims. The district court granted their motion; Wingate now appeals that judgment.

## II.    DISCUSSION

Wingate claims that the district court erred in granting the Defendants' motion for summary judgment on each of her claims. We review a grant of summary judgment de novo, applying the same standard as the district court. Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1107 (8th Cir. 1998). We will affirm if the evidence, viewed in the light most favorable to the nonmovant, shows that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Id. Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial. Id. But "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Each of Wingate's claims is discussed below.

### A.    Wingate's Age Discrimination in Employment Act Claim

Wingate first argues that the district court erred in granting summary judgment to the Defendants on her ADEA claim. The ADEA prohibits an employer from failing or refusing to hire an individual who is at least forty years old because of the individual's age. Lee v. Rheem Mfg. Co., 432 F.3d 849, 852 (8th Cir. 2005) (citing 29 U.S.C. §§ 623(a)(1), 631(a)). In age-discrimination cases, the plaintiff has the burden to present a prima facie case. Ryther v. KARE 11, 108 F.3d 832, 836 (8th Cir.

1997) (en banc).[3] Once a plaintiff establishes a prima facie case, a legal presumption arises that the employer unlawfully discriminated. Id. This shifts the burden to the employer to produce evidence of a legitimate, nondiscriminatory reason for the defendant's failure to hire the plaintiff. Id. at 836-37. If the employer carries this burden, the plaintiff has an opportunity to demonstrate that the employer's proffered nondiscriminatory reason was pretextual. Id. To do this, the plaintiff must present evidence, that "considered in its entirety (1) create[s] a fact issue as to whether [the defendant's] proffered reasons are pretextual *and* (2) create[s] a reasonable inference that age was a determinative factor in the adverse employment decision." Thomas v. Corwin, 483 F.3d 516, 529 (8th Cir. 2007) (emphasis in original) (internal quotations omitted).

Here, the Defendants conceded, for purposes of their summary-judgment motion, that Wingate established a prima facie case of discrimination. As a result, a legal presumption arose that the Defendants discriminated against Wingate. Accordingly, the Defendants had the burden to produce evidence of a legitimate, nondiscriminatory reason for not hiring Wingate. To satisfy this burden, they argued that the four individuals hired were better qualified for the positions, even though they were significantly younger; Wingate was only an average teacher and they endeavored to hire above-average teachers; Wingate's work as a Title I paraeducator involved small groups of students and the jobs Wingate applied for involved classrooms with many students; and if they hired Wingate, they would be forced to hire a replacement part-time employee, which is more difficult than hiring a full-time employee. This

---

[3]Here, the parties do not dispute that McDonnell Douglas' tripartite burden-shifting analysis applies. To establish a prima facie case of age discrimination in a failure-to-hire case, like this one, the plaintiff must prove the following: (1) that the plaintiff was in the protected age group (over forty); (2) that the plaintiff was otherwise qualified for the position; (3) that the plaintiff was not hired; and (4) that the employer hired a younger person to fill the position. Chambers v. Metro. Prop. & Cas. Ins. Co., 351 F.3d 848, 856 (8th Cir. 2003).

shifted the burden of production back to Wingate to produce evidence that the Defendants' proffered reasons for not hiring her were pretextual.

Where, as here, an employer "contends that the selected candidate was more qualified . . . than the plaintiff, a comparative analysis of the qualifications is relevant to determine whether there is reason to disbelieve the employer's proffered reason for its employment decision." Chambers v. Metro. Prop. & Cas. Ins. Co., 351 F.3d 848, 857 (8th Cir. 2003) (alteration in original) (internal quotations omitted). If the comparison "reveals that the plaintiff was only similarly qualified or not as qualified as the selected candidate," then no inference of age discrimination would arise. Id. (internal quotations omitted). Conversely, if the "comparison successfully challenges the employer's articulated reason for the employment decision, it might serve to support a reasonable inference of discrimination." Id.

Here, Brazell stated the following. He hired Benson for the April 2001 opening because of her coaching experience, high recommendations, and prior work experience for the District. He hired Archer for one of the fall 2004 positions because of her special education endorsement, high recommendations, and experience handling large numbers of students. He hired Klassen because of her strong recommendations and experience teaching students with behavioral problems. And he did not even interview Wingate for the special education position because Wingate lacked a necessary prerequisite–a special education endorsement.

Wingate presented no evidence sufficient to reject the Defendants' proffered reasons for not hiring her as pretextual. To be sure, Wingate produced evidence creating a factual question on whether the 2001 job opening included coaching as a job requirement. Nevertheless, this factual dispute did not create a reasonable inference that age was the Defendants' determinative factor in not hiring Wingate. Additionally, Wingate's disagreement with Brazell's assessment of her teaching abilities should not create a triable issue of fact, as Wingate, herself, produced a

written evaluation conducted by Brazell describing her as merely "proficient," as opposed to "distinguished." In sum, Wingate did not produce sufficient evidence to establish that the Defendants' proffered reasons for not hiring her were pretextual.

Wingate also challenges the district's court reliance on the Defendants' use of subjective criteria to support their hiring decisions. Although we have cautioned against the advancement of subjective considerations because they are easily fabricated, we have not outright prohibited their use. Id. at 858. With that said, the Defendants here did not rely exclusively on subjective criteria; rather, they also relied on objective criteria and legitimate educational considerations in making their hiring decisions. Thus, any use by the Defendants of subjective considerations does not give rise to an inference of age discrimination. Accordingly, the district court did not err in granting the Defendants' summary-judgment motion.

## B. Wingate's First Amendment Claims

Wingate also challenges the district court's decision granting the Defendants summary judgment on her First Amendment claims. More specifically, Wingate argues that she produced sufficient evidence to avoid summary judgment on both her freedom-of-speech and freedom-of-association claims. Both claims are addressed below.

### 1. Freedom of Speech

The First Amendment guarantees every citizen a right to engage in free speech. See Wickersham v. City of Columbia, 481 F.3d 591, 597 (8th Cir.), cert. denied by Memorial Day Weekend Salute to Veterans Corp. v. Wickersham, 128 S. Ct. 387 (2007). This constitutional guarantee, however, only extends to protect citizens from government actions. Id. This freedom also applies in the work place. Rankin v. McPherson, 483 U.S. 378, 383 (1987). Accordingly, a public employer, "may not

discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." Id. This is so despite the fact that a public employer could discharge an employee for any reason or for no reason at all. Tautfest v. City of Lincoln, Neb., 742 F.2d 477, 480 (8th Cir. 1984) (applying Nebraska law). As a result, an employee that is discharged in violation of his freedom of speech may be reinstated. Rankin, 483 U.S. at 383-84.

To determine whether a public employer's discharge infringed on an employee's freedom of speech, we must balance the "interests [of the employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Id. at 384 (alteration in original) (internal quotations omitted).

The threshold question in applying this balancing test is whether the employee's speech may be "'fairly characterized as constituting speech on a matter of public concern,'" id. (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)), as only matters of public concern are protected. Cox v. Dardanelle Pub. Sch. Dist., 790 F.2d 668, 672 (8th Cir. 1986). In contrast, where a public employee speaks out in public or in private on matters that relate solely to the employee's parochial concerns as an employee, no First Amendment interests are at stake. Id. Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. Id. The manner, time, and place of the employee's expression are also relevant. Rankin, 483 U.S. at 388.

Here, Wingate's claim fails at the threshold question–her statements did not involve a matter of public concern. Wingate's speech, as found by the district court, involved the following: (1) complaints that she made to Brazell about the part-time Title I paraeducator position and not being paid as a full-time teacher; (2) her unsuccessful applications for the four full-time teacher positions; (3) her request for

-8-

an explanation from Brazell as to why she was not interviewed for those positions; and (4) a meeting with a school board member in the fall of 2001 to request that she be made a full-time Title I teacher.

All four of these actions dealt with Wingate's own personal interests. She was not speaking as a concerned public citizen, but merely as an employee concerned with the District's internal policies and practices. Accordingly, her freedom-of-speech claim fails.

### 2.    Freedom of Association

Like freedom of speech, the freedom of association is a basic constitutional freedom that "lies at the foundation of a free society." Buckley v. Valeo, 424 U.S. 1, 25 (1976) (internal quotations omitted). This right extends to protect certain intimate human relationships, such as the husband-wife relationship, from state intrusion. Roberts v. U.S. Jaycees, 468 U.S. 609, 618 (1984). This freedom, however, is not absolute. Norbeck v. Davenport Cmty. Sch. Dist., 545 F.2d 63, 67 (8th Cir. 1976). Indeed, even a significant interference with an individual's freedom of association may be sustained if there exists a sufficiently important state interest, and the means employed are narrowly drawn to avoid unnecessary abridgement of associational freedoms. Id.

To establish a prima facie case of a freedom-of-association violation, a plaintiff must allege and prove, inter alia, that her "protected conduct was a substantial or motivating factor in the defendant's decision" not to hire her. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654-55 (8th Cir. 2007).

Below, Wingate claimed the Defendants violated her freedom of association when they based their decision not to hire her full-time on her relationship with her

husband, a former teacher for the District.[4]  No one disputes that the Constitution extends protection to this relationship.  Nevertheless, Wingate produced no evidence proving that her relationship to her husband was a substantial and motivating factor in the Defendants' failure to hire her.  Accordingly, Wingate's freedom-of-association claim fails.

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment.

———————————————

[4]In 2004, Wingate's husband filed both a grievance over his dismissal as wrestling coach and a professional practices complaint against a school principal.