# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1716

_____

Scott St. Martin,      *

        *

    Plaintiff-Appellant,    *

        *   Appeal from the United States

v.              *   District Court for the

        *   District of Minnesota.

City of St. Paul,      *

        *

    Defendant-Appellee.    *


_____

Submitted: December 14, 2011
Filed: June 5, 2012

_____

Before LOKEN, BRIGHT and SHEPHERD, Circuit Judges.

_____

BRIGHT, Circuit Judge.

     Scott St. Martin filed suit alleging the City of St. Paul ("the City") engaged in discrimination, on three occasions, by promoting individuals other than him for a fire district chief position in violation of the Americans with Disabilities Act (ADA) and the Minnesota Human Rights Act (MHRA). The district court[1] granted summary judgment to the City on all counts. St. Martin now appeals the district court's judgment, contending the district court erred in finding that he is not disabled under

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

the ADA or MHRA, and that he cannot maintain his MHRA claim as to the May 2009 act of alleged discrimination. We affirm.

## BACKGROUND

St. Martin began working as a firefighter for the City in 1992 and was promoted to captain in 1999. In 2006, he injured his right knee and underwent reconstructive surgery. Consequently, he received workers' compensation from the City. After the surgery, St. Martin returned to work on a light-duty schedule, performing administrative duties at the fire department. Thereafter, he worked briefly as an arson investigator.

In 2007, the City announced an opening for a fire district chief position, which is one rank above captain. St. Martin applied for the position and took a four-part examination. Based on his scores, St. Martin ranked second out of twenty-one candidates. Department chief Timothy Butler then added an interview portion to the exam, and the top five candidates were interviewed by a panel consisting of Butler, three deputy chiefs, and the assistant fire chief of operations. By the time of the interview in February 2008, two additional fire district chief positions had opened up, and as required by the City, St. Martin took a physical exam and received medical clearance from the City's physician. During the interview, Butler asked about St. Martin's knee condition and whether he would need accommodations if he was promoted to fire district chief. Despite being the panel's first choice for the position, St. Martin was not promoted; instead, Butler, who had ultimate authority to make the decision, promoted those candidates ranked numbers three, four, and five. According to a union representative for the local fire fighters' union, Butler told her at some point after the interview that he was going to give St. Martin "the disability benefits he wants."

Another fire district chief position opened up in late 2008. St. Martin applied and interviewed with a panel consisting of Butler, who again inquired about St.

Martin's knee issue. Butler then informed St. Martin in a November 2008 email that he would not be promoted. Butler made this decision even though St. Martin was the other panel members' pick. In the email, Butler recommended that St. Martin invest in his professional development, but that "given your medical status that will prove difficult." Butler also sent an email to the City's human resources contact person, stating:

> We are at an impasse with [St. Martin]: he cannot do the job, and we shouldn't order him to complete training that certifies him to do a job we cannot let him do, AND we don't want to fail in our duty to get him the recert he needs as a term and condition of his employment. There is no guarantee that he'll make district chief, and to be frank, I would not willingly promote him unless I was forced to. I would prefer he retire, take his disability, and open up further options on the district chief list.

(App. 220). In May 2009, St. Martin interviewed for a fire district chief position for the third time and, again, Butler did not promote St. Martin.

St. Martin testified that at all relevant times he sought work with the City in any capacity. However, he only received work as a commercial vehicle inspector in January 2010. He was let go from that position after only two weeks because of his knee injury. St. Martin also worked at his brother's landscaping company during a few off-season months, but did not perform any actual landscaping work. St. Martin took disability retirement in December 2009 and now works as a fire inspector for the City.

Before his May 2009 interview, St. Martin filed a disability discrimination charge against the City with the Equal Employment Opportunity Commission (EEOC). The EEOC dismissed the claim, but notified St. Martin of his right to file suit. St. Martin then filed a complaint in Minnesota setting forth two counts: (1) disability discrimination by the City in violation of the MHRA by refusing to hire him as fire district chief and failing to reasonably accommodate him, and (2) disability

-3-

discrimination by the City in constructively terminating his employment in violation of the ADA and failing to reasonably accommodate him, all because of his disability and/or perception thereof. Based on St. Martin's federal ADA claim, which relies on the same facts as his MHRA claim, the City timely removed the case to the United States District Court for the District of Minnesota.

The district court granted the City's motion for summary judgment, finding: (1) St. Martin was not disabled under the ADA because his knee injury does not substantially limit his ability to work a broad class of jobs and the City did not regard him as being disabled, and (2) the City was not required to accommodate St. Martin's disability. The district court dismissed St. Martin's MHRA claim, finding that he did not satisfy the MHRA's less stringent definition of disability. The district court also found that because the May 2009 interview was not part of St. Martin's discrimination charge before the EEOC, his ADA claim arising out of the May 2009 interview necessarily fails for failure to exhaust administrative remedies. St. Martin now appeals the district court's order granting the City's motion for summary judgment.[2]

## DISCUSSION

This court reviews a district court's grant of summary judgment de novo and may affirm the district court on any basis supported by the record. *Figg v. Russell*, 433 F.3d 593, 597 (8th Cir. 2006). Summary judgment is proper if the movant shows that there is no genuine dispute of any material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

---

[2]St. Martin does not raise his failure to accommodate argument on appeal.

-4-

**A.**

St. Martin contends there are sufficient factual disputes regarding whether he is disabled under the ADA, which should be resolved by a jury. The ADA prohibits an employer from discriminating against an employee because of the employee's disability. 42 U.S.C. §§ 12101-213 (2006). A plaintiff seeking relief under the ADA must show (1) he is a disabled person as defined by the ADA, (2) he is qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) he suffered an adverse employment action because of his disability. *Lors v. Dean*, 595 F.3d 831, 834 (8th Cir. 2010). Disability is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of an individual, (B) a record of such an impairment, or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1); *see* Minn. Stat. § 363A.03, subdiv. 12 (2005).[3] Working is a major life activity. 42 U.S.C. § 12102(2). "When the major life activity at issue is working, 'the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs.'" *Knutson v. AG Processing, Inc.*, 394 F.3d 1047, 1051 (8th Cir. 2005) (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999)).

The parties do not dispute that St. Martin's knee injury is a physical impairment. The question is whether the physical impairment substantially limits his ability to work. St. Martin contends the knee injury (1) restricted him from performing the positions of a firefighter and fire captain within the City, (2) caused

---

[3]"The analysis of [a] MHRA claim is parallel to the ADA claim in all respects but one. The Minnesota statute defines 'disability' as an impairment that 'materially limits' a major life activity." *Kirkeberg v. Canadian Pac. Ry.*, 619 F.3d 898, 907 (8th Cir. 2010); *see* Minn. Stat. § 363A.03, subd. 12 (2005). "The Supreme Court of Minnesota has concluded that 'materially limits' is a 'less stringent' standard than 'substantially limits.'" *Kirkeberg*, 619 F.3d at 907 (citation omitted). Nonetheless, St. Martin sets forth no argument showing how his physical impairment materially limited his major life activity of working.

him to be decertified to work as a commercial vehicle inspector in Minnesota, and (3) made him unable to perform landscaping services. However, St. Martin must show an inability to work a broad class of jobs. *See Knutson*, 394 F.3d at 1051; *Shipley v. City of Univ. City*, 195 F.3d 1020, 1022–23 (8th Cir. 1999) (affirming summary judgment where the record showed that appellant was able to perform a variety of jobs including car wash attendant, salesman, dry cleaner, and dish washer repairman). The fact that St. Martin worked briefly as an arson investigator for the City without accommodation after his surgery and is currently employed as the fire inspector for the City, undermines his contention. Adding to it is the fact that St. Martin was medically cleared to work as fire district chief. Further, St. Martin also worked in his brother's landscaping company, even if he did not perform actual landscaping work, for a few months after claiming disability retirement. On these facts, St. Martin fails to demonstrate that he is unable to work a broad class of jobs. Consequently, he cannot show that his knee injury substantially limits his ability to work a broad class of jobs, or a record thereof.

St. Martin also contends that the City perceived him as disabled based on Butler's statements during and after the interviews, and the City's refusal to employ him in any capacity for two years. The third prong of the ADA's definition of disability requires St. Martin to show he "has been subjected to an action prohibited under [the ADA] chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3). St. Martin must put forth direct evidence of discrimination or an inference of unlawful discrimination to support his allegation against the City. *See Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004).

Direct evidence is that which shows "a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Id.* (quotation omitted). Direct "refers to the causal strength of

the proof, not whether it is 'circumstantial' evidence." *Id.* Alternatively, "if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Id*. This means St. Martin must allege facts supporting the underlying elements of his ADA claim. *See Lors*, 595 F.3d at 834 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)). If he can do so, the burden then shifts to the City to articulate some legitimate, nondiscriminatory reason for its action. *Id.* If the City articulates such a reason, the burden shifts back to St. Martin to show the City's justification is a pretext. Id.

St. Martin relies on Butler's oral and written statements as direct evidence of discrimination. St. Martin argues that Butler's statements reflect his belief, as the decision-maker, that St. Martin could not handle the fire district chief job and shows the direct link between the discriminatory motive and failure to hire and employ St. Martin. Indeed, Butler's statements reflect his view that St. Martin is not the best candidate for the job. However, Butler's inquiries concerning St. Martin's knee injury during the 2008 interview and Butler's statements to St. Martin thereafter included suggestions on how St. Martin could make himself a better candidate, thereby improving his chances for a promotion. And Butler's statements to third parties—the union representative and human resources contact person— about St. Martin's medical status and giving St. Martin the disability he wanted, without more, do not show that Butler considered St. Martin's knee injury a substantial limit on his ability to work a broad range of jobs. *See Nyrop v. Indep. Sch. Dist. No. 11*, 616 F.3d 728, 736 (8th Cir. 2010) (holding that isolating comments made by principal did not show that the school district regarded teacher as disabled). St. Martin offers no direct evidence that connects his inability to obtain a job outside the fire department with his physical impairment.

St. Martin also contends that Butler's decisions were pretext for unlawful discrimination. Even assuming that he could establish a prima facie case of

discrimination, St. Martin acknowledges that the City articulated a nondiscriminatory reason for its refusal to promote him to fire district chief—there were more qualified candidates. He refers to his high test scores, experience, and the fact that he was the panel's first choice for the fire district chief position on two occasions as evidence which contradicts Butler's decisions. But St. Martin's arguments are belied by the fact that the top candidate after both interviews was not promoted. In fact, Butler testified that he chose the lower-ranking candidates because they were educationally superior and understood the department's vision. In contrast, St. Martin did not read the information setting forth the department's vision, and came to the interview unprepared. Thus, St. Martin is unable to show the City's justification was pretext. Consequently, St. Martin has not put forth either direct or indirect evidence that the City regarded him as disabled. A perceived disability to perform the fire district chief position is not the same as a perceived disability which materially limits a major life activity. St. Martin fails to satisfy his ADA claim and we, therefore, affirm the district court's decision on this issue.

**B.**

St. Martin does not dispute that he failed to exhaust his administrative remedies under the ADA as to the May 2009 interview, but contends that the district court erred in dismissing his MHRA claim. In contrast to his ADA claim, St. Martin need not exhaust his administrative remedies so long as he files an administrative charge or brings a lawsuit within one year of the alleged discrimination. Minn. Stat. § 363A.28, subd. 3 (2005). St. Martin commenced this suit in July 2009, within one year of the alleged discrimination in May 2009.

Like the ADA, the MHRA prohibits discrimination in employment because of one's disability. Minn. Stat. § 363A.02 (2005). The MHRA defines disability in terms similar to those under the ADA, except that the former defines "disability" as an impairment that "materially limits" a major life activity. *See* Minn. Stat. § 363A.03, subd. 12 (2005). "Materially limits" is a less stringent standard than

"substantially limits." *Kirkeberg v. Canadian Pac. Ry.*, 619 F.3d 898, 907 (8th Cir. 2010) (citing *Sigurdson v. Carl Bolander & Sons, Inc.*, 532 N.W.2d 225, 228 (Minn.1995)). Analysis of a ADA claim applies equally to a MHRA claim. *Loye v. Cnty. of Dakota*, 625 F.3d 494, 497 n.2 (8th Cir. 2010).

St. Martin argues that the reduction in employment opportunities and his inability to secure work with the City due to his disability or perception thereof meets the MHRA's less stringent standard of disability. However, as discussed, even when viewed in the light most favorable to St. Martin, the facts here do not show how he was materially limited in the major life activity of working or regarded as such. Therefore, the district court correctly dismissed St. Martin's MHRA claim.

**CONCLUSION**

For the foregoing reasons, we affirm the district court's judgment.

SHEPHERD, Circuit Judge, concurring in part and dissenting in part.

Because St. Martin failed to exhaust his administrative remedies as to the final job opening, I concur in the majority decision, affirming the district court's grant of summary judgment as to that ADA claim. However, I believe there was direct evidence that Butler did not promote St. Martin because he regarded him as disabled. Accordingly, I would reverse and allow a jury to decide St. Martin's ADA claims as to the first two job openings and all of his MHRA claims.

Under the ADA, an employee can recover from an employer that treats the employee "adversely because it regarded [the employee] as having an impairment that substantially limits one or more major life activities." Weber v. Strippit, Inc., 186 F.3d 907, 915 (8th Cir. 1999) (emphasis omitted). A "regarded as disabled" claim exists where "'an employer mistakenly believes an actual, non-limiting impairment substantially limits one or more of the individual's major life activities.'" Kirkeberg

v. Canadian Pac. Ry., 619 F.3d 898, 906 (8th Cir. 2010) (quoting Wooten v. Farmland Foods, 58 F.3d 382, 385 (8th Cir. 1995)).  Working is a major life activity under the ADA, and the ability to work is substantially limited where an impairment prevents an individual from working a broad class of jobs.  Conant v. City of Hibbing, 271 F.3d 782, 784-85 (8th Cir. 2001) (per curiam); 29 C.F.R. § 1630.2(i.)(1.)(i.).  As observed by the majority, St. Martin is entitled to relief if he can show that the City regarded him as being unable to perform a broad class of jobs and discriminated against him because of the perceived disability.  The analysis of St. Martin's MHRA claims is similar to the analysis of his ADA claims.  See Ante at n.3.

An employee can survive summary judgment on an ADA claim by presenting direct evidence of discrimination.  Libel v. Adventure Lands of Am., Inc, 482 F.3d 1028, 1034 (8th Cir. 2007).  "'[D]irect evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action.'"  Id. (quoting Griffith v. City of Des Moines, 387 F.3d 733, 736-37 (8th Cir. 2004)).  "'[D]irect' refers to the causal strength of proof, not [to] whether it is 'circumstantial' evidence."  Griffith, 387 F.3d at 736.  Use of a burden shifting framework is not necessary for the plaintiff to get his case to the jury where direct evidence exists; a plaintiff with direct evidence is entitled to get to the jury based on that evidence alone.  See id.

St. Martin offered evidence of multiple statements related to his disability made by Butler, who was the decisionmaker in the hiring process.  During St. Martin's interviews for the several openings, Butler repeatedly questioned St. Martin about his knee injury.  Butler told St. Martin that he did not believe St. Martin "could physically do the job" of fire chief.  In discussing how St. Martin might improve himself as a candidate for future fire chief openings, Butler told St. Martin he could make an "investment in personal professional development and department involvement" but stated that given St. Martin's "medical status" such development would "prove difficult."  Butler sent an email to human resources stating St. Martin "cannot do the

job . . . . I would not willingly promote him unless I was forced to. I would prefer he retire, take his disability, and open up further options on the district chief list." St. Martin was required to get medical clearance before being allowed to interview for the fire district chief positions although other applicants were not required to do so. Additionally, St. Martin was the second highest scoring candidate on the aptitude exam, was the first choice of the interview panels, and had a history of "outstanding" reviews during his eighteen-year career with the Fire Department.

The majority characterizes Butler's statements as stray remarks and concludes that the statements by Butler are not direct evidence linking Butler's discriminatory animus to his failure to promote St. Martin. See Ante at 7. I disagree and would conclude Butler's remarks are direct evidence sufficiently linking Butler's animus to his failure to promote St. Martin.

Certainly, "'[n]ot every prejudiced remark made at work supports an inference of illegal employment discrimination.'" Arraleh v. Cnty of Ramsey, 461 F.3d 967, 975 (8th Cir. 2006) (quoting Rivers-Frison v. Se. Mo. Cmty. Treatment Ctr., 133 F.3d 616, 619 (8th Cir. 1998)). See, e.g., Twymon v. Wells Fargo & Co., 462 F.3d 925, 934 (8th Cir. 2006) (finding for employer where decisionmaker's racially suspect statements were not made "during the decisional process" of termination and appeared to be made with the intent of "attempting to preserve and promote" the employee). See also Arraleh, 461 F.3d at 975 (finding statement was not actionable because it was not made by a decisionmaker). "'We have carefully distinguished between comments which demonstrate a discriminatory animus in the decisional process or those uttered by individuals closely involved in employment decisions, from stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process.'" Id. (quoting Rivers-Frison, 133 F.3d at 619). Direct evidence includes "evidence of actions or remarks of the employer that reflect a discriminatory attitude, comments which demonstrate a discriminatory animus in the decisional process, or comments uttered by individuals closely involved in employment decisions." King v. United States, 553 F.3d 1156, 1161 (8th Cir. 2009)

-11-

(citations and internal quotation marks omitted). Where an employee has evidence of "'conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude,'" this is direct evidence of discrimination. See Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir. 1993) (quoting Ostrowski v. Atl. Mut. Ins. Cos., 968 F.2d 171, 182 (2d Cir. 1992)) (discussing direct evidence in a mixed-motive case).

In this case, the evidence is direct because the discriminatory statements were made by the sole decisionmaker and directly related to St. Martin's ability to do the job. Specifically, Butler stated that St. Martin could not "physically do the job" of fire chief. Morever, Butler's view of St. Martin as disabled was not limited to his perceived inability to perform one specific job. Instead, St. Martin has offered evidence that Butler regarded him as unable to perform a broad class of jobs. Butler stated that there was "no return to work" option for St. Martin. These were not stray or isolated remarks; they were repeated statements directly addressing St. Martin's ability to perform the major life function of working, and they were statements made by the decisionmaker.

Whether Butler's proffered reasons for not promoting St. Martin were his actual reasons or whether he did not promote St. Martin because he regarded St. Martin as disabled is a question of fact for the jury. To affirm the grant of summary judgment in this case erroneously takes away from the jury a question of fact and denies St. Martin the trial to which he is entitled based on the direct evidence he has offered.

_____