# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-1487

_____

Gary T. Smith

*Plaintiff - Appellant*

v.

United Parcel Service

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 14, 2016
Filed: July 12, 2016

_____

Before MURPHY, SMITH, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

United Parcel Service (UPS) fired Gary Smith, a full-time supervisor at UPS's Earth City, Missouri distribution facility. After his termination, Smith filed this lawsuit against UPS alleging race discrimination. The district court[1] concluded that

_____

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

Smith failed to show that UPS's legitimate, nondiscriminatory reason for his termination was pretextual. Consequently, the court granted summary judgment to UPS. We affirm.

## I. *Background*

UPS hired Smith, an African-American male, in June 2010 as an unloader. Smith advanced rapidly. In September 2010, UPS promoted him to the position of part-time supervisor. And five months after that, UPS promoted Smith to full-time supervisor on the "Night Sort" shift. Smith had several notable interpersonal conflicts with other UPS employees during his tenure. In May 2011, as Smith distributed candy to employees as a safety incentive, Camille Elston Young, the supervisor of the area, said to Smith, "This ain't the time for safety candy, come back later!"[2] This situation escalated, resulting in Young yelling at Smith and asking for assistance to make him leave the area. Smith filed a complaint, asserting that Young's "attitude and unprofessionalism [were] hindering [him] from doing [his] job." Two months later, in July 2011, Smith directed an employee, "let's go, . . . we have work to get done. Let's move to the work." The employee took offense, resulting in a conflict that required Smith's manager to intervene. In November 2011, Smith filed a complaint about another conflict with Young, asking his manager to "intervene because the vicious verbal attack from [Young] was unwarranted and without just cause."

Also in November 2011, Smith had a conflict with his manager, Trevor West, and another supervisor, Mike Houlihan. One night during Smith's shift, West, a Caucasian male, pulled aside some employees under Smith's supervision to discuss their performance. Smith was upset by West's meeting and reprimand of employees that Smith supervised without first talking to him. During Smith's conversation with West about the matter, Houlihan, also Caucasian, entered the room and said, "I ain't

---

[2]Record material that was typeset in all capital letters has been quoted using standard sentence capitalization.

got time for this bulls**t," to which Smith replied, "Hey Mike, please don't talk to me like that. If you have a problem with my people, just let me know." Houlihan replied, "I ain't got time for this power trippin bulls**t, take that bulls**t somewhere else!" Smith responded angrily:

> Hold on m[o]ther f****r. I asked your b***h a*s not to talk to me like that, but since you want [to] do it, then, let[']s do! Stay you're a*s over on the PD 3, 4 and 5. You had the sort aisle and didn't do s**t with it; I got it now!

Houlihan responded, "I'm a full time supervisor, I can do whatever the f**k I want!" Afterward, Tony Taylor, the Division Manager and an African-American male, called Smith and Houlihan into his office separately to discuss the incident, but he disciplined neither employee.

Smith experienced more difficulties at UPS the following year. In July 2012, Smith reported in an internal UPS survey that "[t]he communication breakdown from Managers to Full Time Supervisors to Part Time Supervisors is out of control. Individuals being degraded, cursed out and humiliated will eventually h[i]nder the success of UPS. UPS's model of, 'beating people up,' to achieve production numbers will eventually impact the perception of UPS." Smith requested a transfer later that month.

Finally, on August 25, 2012, Smith was involved in an incident that culminated in his termination. During his shift, Smith placed his keys in a drawer in his office. Thereafter, a coworker told Smith that West had asked all the supervisors to meet in the small sort area. When Smith arrived, West handed two packages to him and asked him to take them across the building; West and Houlihan were the only people remaining in the small sort area. Later, when Smith returned to his office, he could not find his keys. He suspected that West orchestrated the errand as a ruse to get him

away from his office so that West and Houlihan could take his keys. After looking for his keys for 30 minutes, Smith called the police and called Taylor to report the incident. Smith also called West and accused him of taking the keys: "Trevor, where my keys at man? Why ya'll messing with me?" West replied, "I don't know where your keys are!" Smith responded, "Whatever! If you mother f*****s want to go there, let's go there. Don't be acting like some b*****s and doing it behind my back. Don't bring my f*****g family into this!"[3]

Immediately following the incident, UPS put Smith on administrative leave. Smith had a meeting about the incident with Human Resources Director Stan Roux. When Roux alleged that Smith had threatened West, Smith denied it. Roux then said that Smith had been insubordinate; Smith responded, "I did no such thing."

In a subsequent meeting with Roux, Smith renewed his request for a transfer. Roux denied the request. Roux told Smith that he wanted him "to stay in the hub and learn how to deal with conflict management"; Smith denied having any problems with conflict management. Roux then told Smith that he needed to change his attitude. Smith replied, "I'm sorry sir, but how can you tell me to change my attitude? Sir, we don't know each other. This is only the second time we have met." Roux then told Smith, "I want you to go back there and do your job." Smith replied, "[S]ir, I do my job." Roux said, "I don't want you to go back there and ever use profanity again," to which Smith replied, "[Y]es, sir, I'll do whatever you tell me to do." Finally, Roux said, "[S]o is it safe to say that if you use profanity again, that will be your last day here?" Smith replied, "[N]o, sir, I won't agree to that, because anybody can come tell you that I said something and you can say that I agree[d] to" be terminated.

---

[3]Smith's keys were found six months later in a location that had been searched; West's and Houlihan's involvement in the incident was never established.

After the meeting, Roux and Taylor decided to terminate Smith's employment. Roux explains Smith's termination this way:

4. Human Resource Area Manager Eric Henderson reported to me that Gary Smith (Plaintiff) on or about August 25, 2012 had accused Trevor West of stealing his keys, cursed at West and had allegedly threatened West. I was aware that the police were involved in the matter. Needless to say, the incident was a big deal and generated a lot of attention from a lot of people at UPS. [Smith] was suspended pending investigation into the matter.

5. UPS'[s] security function interviewed all night sort management to try to determine who, if anyone, took [Smith's] keys.

6. I met several times with [Smith] about the August 25, 2012 incident. I understood that [Smith] had a history of conflicts at UPS but in our meeting [Smith] denied any conflict management problems.

7. During our meetings, I felt that [Smith] had used inappropriate and threatening language toward West but that he failed to appreciate the seriousness of the situation. I felt like [Smith] needed to change his attitude but [Smith] denied having an attitude problem. Worst of all, [Smith] could not even commit to me that, if he [were] allowed to go back into the Hub, he could refrain from using inappropriate language.

8. [Smith's] conduct violated UPS policies. I felt that because [Smith] refused to acknowledge his problems and refused to commit to change, [Smith] left UPS with no alternative but to terminate [his] employment. I met with Tony Taylor and we agreed on this point.

Smith's termination letter from Henderson provided a similar explanation:

> We recently conducted an investigation related to allegations of inappropriate behavior related to an incident that occurred on the morning of August 25, 2012.
>
> This investigation revealed that your actions were very inappropriate for a management person at UPS, and that you have been involved in a pattern of conduct with other employees that violates the Company's Professional Conduct and Anti-Harassment Policy, the Policy Book, and the Code of Business Conduct.
>
> Despite the information gathered during the investigation, when we met with you both during and at the conclusion of the investigation, you stated that you felt that your behavior and actions were justified, and you expressed no regret about anything that you had done or said related to these events.
>
> Consequently, because of your violations of Company policy, we are left with no choice other than to terminate your employment with United Parcel Service, effective September 14, 2012.

After pursuing remedies through alternative dispute resolution and the Equal Employment Opportunity Commission, Smith filed this case, alleging employment discrimination on the basis of race. The district court granted summary judgment to UPS, concluding that Smith failed to provide sufficient evidence to rebut the proffered legitimate reasons for termination as pretextual. Smith appeals. We have jurisdiction to review this final judgment of the district court pursuant to 28 U.S.C. § 1291.

## II. *Discussion*

The district court concluded that Smith did not show that a genuine dispute of material fact remained as to whether UPS's stated reasons for his termination were a

pretext for racial discrimination. Smith argues that the district court erred because the evidence does not indicate that he was terminated for bad behavior but instead suggests that UPS fired Smith because he is black. We disagree.

We review the district court's grant of summary judgment de novo, viewing the evidence and drawing all reasonable inferences in Smith's favor as the nonmoving party. *Chappell v. Bilco Co.*, 675 F.3d 1110, 1114 (8th Cir. 2012). Under the *McDonnell Douglas* burden-shifting framework, Smith is first required to make out a prima facie case of racial discrimination. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011) (en banc) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). We presume for purposes of analysis that Smith has satisfied this requirement. *See Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 936 (8th Cir. 2006). UPS is then required to articulate a legitimate, nondiscriminatory reason for terminating Smith; which it has done. *Torgerson*, 643 F.3d at 1046. To survive summary judgment, Smith must now demonstrate that a genuine issue remains as to whether UPS's purported legitimate reason for termination is pretextual. *Id.* Put another way, Smith is required to show that racial discrimination, not UPS's stated reasons, "actually motivated" UPS to terminate his employment. *See id.* at 1047.

The totality of the evidence in this case does not support a finding of unlawful discrimination. Smith has not put forth evidence to rebut UPS's contention that it fired Smith due to his conduct. The record shows that Smith cursed in the workplace, arguably threatened his supervisor, had multiple conflicts with other employees, and disagreed with company efforts to address the problems. Smith's behavior might not be viewed by some employers as a basis for termination. But Smith does not provide evidence to show these reasons were merely rationalizations to cover for racial discrimination.

Roux's explanation for Smith's termination focuses on Smith's pattern of misconduct and his refusal to acknowledge his problems:

> I understood that [Smith] had a history of conflicts at UPS but in our meeting [Smith] denied any conflict management problems. . . . [Smith's] conduct violated UPS policies. I felt that because [Smith] refused to acknowledge his problems and refused to commit to change, [Smith] left UPS with no alternative but to terminate [his] employment.

Smith's termination letter from Henderson matches Roux's explanation:

> [Y]ou have been involved in a pattern of conduct with other employees that violates [UPS's conduct policy]. . . . [And] when we met with you . . . , you stated that you felt that your behavior and actions were justified, and you expressed no regret about anything that you had done or said related to [the lost-keys incident].

In short, these documents support UPS's assertion that it terminated Smith's employment because he had a history of conflict at UPS and was unwilling to acknowledge those problems and commit to change.

Smith's deposition testimony does not establish a fact dispute regarding his interaction with Roux:

| [UPS Counsel:] | What did you understand that Stan [Roux] was asking you to do [during the pretermination meeting]? |
|---|---|
| [Smith:] | I understood that Stan [Roux] was asking me to change my attitude. I told Mr. Roux that I didn't have an attitude problem. I didn't have behavior problems. No one had ever documented me having any attitude problems, any bad behaviors. |

| | |
|---|---|
| [UPS Counsel:] | Hang on one second. Do you think it was bad behavior for you to call Mike Houlihan a motherf****r? |
| [Smith:] | Yes. |
| [UPS Counsel:] | Do you think it was bad behavior for you to call Trevor [West] a motherf****r? |
| [Smith:] | Yes. |

Similarly, Smith testified that Roux "wouldn't support me transferring because he felt that I needed to stay and learn how to deal with conflict management." When asked whether Smith felt he had any problems with conflict management, Smith responded, "No problems at all." These statements are consistent with UPS's assessment that Smith was unwilling to acknowledge his behavioral problems.

Finally, as the district court noted, "[Smith] has presented no evidence to establish that [UPS's] given reason for his termination was pretextual." Smith points to his deposition testimony that West referred to African-American employees as "idiots" and was "harder" on young black men. But the evidence shows that West did not play any part in the decision to terminate Smith's employment. Instead, Taylor and Roux decided to fire Smith on the basis of his behavior and attitude. In short, we find no reversible error in the district court's conclusion that "[Smith] has failed to show that a material question of fact remains as to pretext, and [UPS] is entitled to judgment on this claim."

### III. *Conclusion*

Accordingly, we affirm the final judgment of the district court.

_____