# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 18-3535

———————————————

Padraic A. Power

*Plaintiff - Appellant*

v.

University of North Dakota School of Law; Kathryn R.L. Rand, Dean (Official Capacity); Bradley Myers, Associate Dean (Official Capacity); Admissions Committee, Undisclosed Members (Official Capacities); North Dakota State Board of Higher Education; Kathleen Neset, Chair (Official Capacity); Don Morton, Vice Chair (Official Capacity); Kari Reichert, Board Member (Official Capacity); Kevin Melicher; Mike Ness, Board Member (Official Capacity); Mike Hacker, Board Member (Official Capacity); Greg Stemen, Board Member (Official Capacity); Nick Evans, Student Board Member (Official Capacity); Andy Wakeford, Staff Advisor (Official Capacity); Prof. Ernst Pijning, Faculty Advisor (Official Capacity)

*Defendants - Appellees*

————————

Appeal from United States District Court
for the District of North Dakota - Fargo

————————

Submitted: December 10, 2019
Filed: March 27, 2020

————————

Before SMITH, Chief Judge, LOKEN and GRASZ, Circuit Judges.

————————

SMITH, Chief Judge.

Padraic Power sued the University of North Dakota School of Law and various school officials (collectively, "UND Law"), under Title II of the Americans With Disabilities Act of 1990 (ADA). He alleged that UND Law discriminated against him because of his mental illness when it rejected his admission application. The district court[1] granted summary judgment to UND Law on the merits because Power failed to show that UND Law's legitimate, nondiscriminatory reason for rejecting his application was pretext for discrimination. We affirm.

I. *Background*

UND Law received 300 applications for the 2015–2016 academic year, offered 204 applicants positions in the incoming class, and matriculated 85 students. UND Law has an Admissions Committee consisting of Associate Dean Bradley Myers and Professor Alexandra Sickler. These two faculty members review the application materials and select persons for admission to UND Law. In deciding, the Admissions Committee considers an admission index for each applicant based on the applicant's LSAT score and undergraduate GPA. It also takes into account other considerations. These include: previous undergraduate and graduate schools, previous academic success, any gaps in education, prior law school attempts, fields of study, LSAT writing samples, and reference letters. Using these, the Admissions Committee takes a holistic approach in reviewing applications and chooses students with a likelihood of success at UND Law.

In July 2015, Power applied to be admitted into the 2015–2016 school year at UND Law. Power had an LSAT score of 153 and an undergraduate GPA from the University of Connecticut in 1994 of 2.645. In addition, he had 22 hours of college

---

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

credit from Capital Community College from 2012–2014 and averaged a 3.90 GPA. The Admissions Committee set his admission index at 48. This index was average for the UND Law incoming class; the lowest index admitted was a 25, but the highest index rejected was a 67.

Power also submitted two older recommendation letters: (1) a 2008 letter from his LSAT instructor and (2) a 2009 letter from a former employment supervisor. He included a short personal statement and mentioned in his application that he had previously withdrawn from two other law schools—Loyola Law School in fall 2000 and Quinnipiac University School of Law in fall 2002 and spring 2003. In addition, his work history included 18 different jobs from 2005–2014.

The Admissions Committee received Power's application on July 16, 2015, and noted that Power's file did not contain the necessary information about his previous law school enrollments. The next day, Professor Sickler voted to reject Power's application. On July 27, Dean Myers received a letter from Power, explaining why Power had previously withdrawn from the two law schools. He stated: "There's only one consistent fact in my withdrawals from law school: my bipolar disorder." Appellant's App. at 49. However, he noted that in the past few years he had "remained stable, regularly taking medication and routinely getting psychological help." *Id.* Dean Myers forwarded Power's letter to Professor Sickler, but she did not change her vote to reject the application. Dean Myers also voted to reject Power's application. On July 30, UND Law advised Power that his application had been rejected.

On August 7, Power e-mailed Dean Kathryn Rand and alleged that UND Law had rejected his application because of his bipolar disorder. Dean Rand then forwarded the e-mail to Dean Myers and Ben Hoffman, the Director of Admissions and Records, to ask how to respond. Hoffman stated:

Typically when I receive emails/calls regarding denials I simply state that applicants are evaluated on the sum of all application components and that GPA and LSAT are factors but a high LSAT or GPA are not guarantees of admission. The complete package is considered and the committee makes decision[s] based on all available information. In this case I can see how the applicant may think that his disclosure of mental illness may be a factor, but the matriculation/withdrawal to 2 previous law schools and consistently low undergraduate [GPA] over multiple years are most likely important factors.

*Id.* at 268. Dean Myers also responded that Hoffman identified the most important factors and explained that the Admissions Committee also looked at Power's personal statement.

Dean Rand then replied to Power that the Admissions Committee reviewed each applicant holistically and stated that LSAT and GPA data do not guarantee admission. Further, she stated that she was "confident that the committee considered that [Power's] experience with mental health would enable [him] to be a passionate and effective advocate for the fair and just treatment of the mentally ill." *Id.* at 270. Power also alleged that Dean Rand yelled at him to go to another law school during a phone conversation.

Power again applied to UND Law in February 2016 for the 2016–2017 school year. He submitted a very similar application but added a longer personal statement. In the statement, he detailed his law school history and discussed how he suffered from depression. He stated that he now had a better perspective on depression and anxiety. UND Law again declined to admit Power.

Power filed this case, alleging that UND Law discriminated against him on the basis of his disability. UND Law filed a motion for summary judgment. In its motion, UND Law argued that Power failed to establish his Title II claim and that UND Law

was entitled to sovereign immunity. The district court granted summary judgment to UND Law, concluding that Power failed to provide sufficient evidence to show that UND Law's legitimate reasons for rejecting his application were pretextual. In addition, the district court explained that because Power failed to establish a Title II claim, it did not need to decide the sovereign immunity issue. Power appeals.

## II. *Discussion*

We review de novo a district court's grant of summary judgment. *St. Martin v. City of St. Paul*, 680 F.3d 1027, 1032 (8th Cir. 2012). A court should only grant summary judgment if the moving party shows that there is no genuine dispute of material fact and that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Summary judgment is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." *St. Martin*, 680 F.3d at 1032.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Power alleges that UND Law violated Title II by rejecting his UND Law application because of his bipolar disorder. In the absence of direct evidence of discrimination, we analyze Power's disability discrimination claim under the *McDonnell Douglas* burden-shifting framework. *See Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1074 (8th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

First, Power must establish a prima facie case of discrimination by showing that "1) he is a person with a disability as defined by statute; 2) he is otherwise qualified for the benefit in question; and 3) he was excluded from the benefit due to discrimination based upon disability." *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999). Here, "[w]e presume for purposes of analysis that [Power] has satisfied

-5-

this requirement." *Smith v. United Parcel Serv.*, 829 F.3d 571, 575 (8th Cir. 2016). Next, the burden shifts to UND Law to articulate a legitimate, nondiscriminatory reason for rejecting Power's application. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011) (en banc). UND Law has met this burden by consistently explaining its reasoning for rejecting Power's application:

> Applications are always reviewed with the same basic question provided us under the standards of the ABA. We should only admit students that we think have the potential to successfully complete the program of legal studies and be admitted to the Bar.
>
> .    .    .
>
> [I]t would be fair to say that on review of the application we did not think [Power was] a good fit to complete our program of the study of law.

Appellant's Add. at 40. Further, UND Law continues to emphasize that the Admissions Committee "weigh[s] LSAT, GPA, previous courses of study, recommendation letters, the strength of the personal statement, and more beyond that." Appellant's App. at 70.

"To survive summary judgment, [Power] must now demonstrate that a genuine issue remains as to whether [UND Law's] purported legitimate reason for [rejecting Power's application] is pretextual." *Smith*, 829 F.3d at 575. Explained another way, Power must show that disability discrimination, and not UND Law's stated reasons, motivated the Admissions Committee's rejection of his application. *See id.* Power argues that UND Law's reasons are pretextual because (1) UND Law's admissions process was too subjective and (2) UND Law accepted applicants with lower index scores than Power's index score. Both of these arguments fail.

First, Power argues that UND Law's admissions process is so subjective that it would allow a reasonable factfinder to conclude that a discriminatory reason more likely motivated UND Law's decision than the reasons given. We give deference to academic decisions and "will not invade a university's province concerning academic matters in the absence of compelling evidence that the academic policy is a pretext for disability discrimination." *Falcone v. Univ. of Minn.*, 388 F.3d 656, 659 (8th Cir. 2004) (cleaned up). For example, we explained in *Keefe v. Adams* that educators in graduate school programs should be able to decide whether a student can meet the demands of a profession and emphasized the "restrained judicial review of the substance of academic decisions." 840 F.3d 523, 533 (8th Cir. 2016) (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985)). Therefore, UND Law should be given some deference in deciding which students will be a good fit for its law program.

In addition, "the presence of subjectivity in . . . evaluations is *itself* not a grounds for challenging those evaluations as discriminatory." *Wittenburg v. Am. Exp. Fin. Advisors, Inc.*, 464 F.3d 831, 839 (8th Cir. 2006) (quoting *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 780 (8th Cir. 1995)). Even in the employment context, we have explained that subjective criteria do not give rise to an inference of discrimination when a decisionmaker also considers objective criteria and other legitimate educational considerations. *Wingate v. Gage Cty. Sch. Dist., No. 34*, 528 F.3d 1074, 1080 (8th Cir. 2008).

For example, in *Wingate*, the plaintiff challenged the school's use of subjective criteria in making its decision to hire someone more qualified than the plaintiff for a full-time position. *Id.* at 1079–80. We explained that the school's subjective considerations did not create an inference of discrimination because the school also relied on other objective criteria, such as previous experience and educational endorsements. *Id.* at 1080. And, in *Torgerson*, the fact that a candidate's interview score made up 40 percent of the hiring score was not enough to show that the

employer had a discriminatory intent. 643 F.3d at 1050. Each interview consisted of the same panel and same questions, and the plaintiff failed to provide evidence that the subjective portion was discriminatory. *Id.*

A focus on an applicant's disability in the selection process can certainly generate valid concern about the fairness of the process. For instance, the Sixth Circuit held that there was a genuine dispute of material fact as to whether a university's reasons for not admitting a graduate student were pretext for disability discrimination, where a majority of the plaintiff's interview focused on questions about her disability. *Sjostrand v. Ohio State Univ.*, 750 F.3d 596, 600–02 (6th Cir. 2014). However, unlike the plaintiff in *Sjostrand*, Power failed to present any evidence that UND Law focused on or even factored his disability into its decision. Neither Dean Myers nor Professor Sickler ever discussed Power's disability. In fact, Professor Sickler decided to reject Power's first application before ever learning of his disability. Because Power failed to provide evidence of discriminatory intent in the subjective portions of the application process, his case is more similar to *Torgerson*.

Further, like *Wingate*, UND Law made it clear that it considered a variety of objective and subjective criteria. In fact, most were objective: GPA, LSAT score, previous law school experience, previous school experience, and time since completing an undergraduate degree. Power appears to argue that UND Law should only have considered the admission index of his GPA and LSAT score. But, given the deference accorded graduate schools, UND Law's holistic approach to application reviews did not discriminate against Power in determining that Power would not be a good fit for UND Law. Power had dropped out of law school three times, had a very low undergraduate GPA, and submitted out-of-date recommendation letters. These factors may have been affected by Power's disability, but the school's use of them, without more, does not show discriminatory intent. Because Power failed to show any

proof of discriminatory intent in UND Law's subjective determination of who to admit into the law school, his first argument fails.

Second, Power argues that UND Law's reasons for rejecting his application are pretextual because UND Law admitted students with lower index scores than Power's index score. As *Torgerson* explained, Power may show that there is pretext by proving that UND Law accepted less qualified applicants. 643 F.3d at 1049. However, "[i]f the comparison reveals that the plaintiff was only similarly qualified or not as qualified as the selected candidate[s], then no inference of discrimination would arise." *Id.* (cleaned up).

In *St. Martin*, the plaintiff alleged that his employer discriminated against him on the basis of his disability when the employer did not promote him. 680 F.3d at 1033–34. As evidence of pretext, he stated that he was more qualified than other candidates based on his high test scores, experience, and the fact that he was the first choice for the position previously. *Id.* at 1034. However, we explained that the plaintiff's evidence did not establish pretext because the top candidate had not been promoted, and lower-ranking candidates better fit the department's vision. *Id.*

Similar to *St. Martin*, in the present case, Power fails to establish pretext because, at most, he can show that his index score was within the range of applicants who were both rejected and accepted. In addition, although Power had an above-average LSAT score, his GPA was significantly lower than the average GPA. And, some applicants with higher index scores were also rejected. Even when considering Power's index score alone, Power cannot show that he was more qualified than most of the students who were accepted into UND Law. Therefore, this argument fails to show UND Law used pretext to deny his application.

Finally, Power alleges that a phone call between himself and Dean Rand shows that UND Law discriminated against him because of his bipolar disorder. He alleges

that Dean Rand yelled at him and told him to go to another law school. But, assuming as we must that this phone call occurred, Dean Rand's statement does not "create a reasonable inference that [Power's bipolar disorder] was [UND Law's] determinative factor in not [admitting Power]." *Wingate*, 528 F.3d at 1080. There simply is no evidence of a discriminatory animus against Power based on his disability.

The district court correctly determined that "[a] generous reading of Power's claims does not reveal specific, competent evidence from which a reasonable jury could conclude UND Law's proffered legitimate, nondiscriminatory reasons (i.e., lack of potential to complete the program and pass the bar exam) [are] pretextual." R. & R. at 24, *Power v. Univ. of N.D. Sch. of Law*, No. 3:16-cv-338-DLH (D.N.D. Oct. 3, 2018), ECF No. 73. Power's Title II disability discrimination claim fails.[2]

### III. *Conclusion*
Accordingly, we affirm the judgment of the district court.

_____

_____

[2]Because Power's Title II claim fails on the merits, we do not have to address the sovereign immunity question. *See Lors v. Dean*, 746 F.3d 857, 864 (8th Cir. 2014) (explaining that this court does not have to decide the sovereign immunity issue if the district court correctly determined that a "claim fails on the merits").

-10-