[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12529
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-23138-FAM

PAUL B. HARRISON,

Plaintiff-Appellant,

versus

OCEAN BANK,
a Florida banking corporation, and
FEDERAL DEPOSIT INSURANCE CORPORATION,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(June 9, 2015)

Before HULL, JORDAN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff Paul B. Harrison brought this two-count action in an attempt to

invalidate an administrative decision of the defendant Federal Deposit Insurance

Corporation (the "FDIC") that effectively nullified Harrison's prior settlement agreement with the defendant Ocean Bank. After Ocean Bank terminated his employment, Harrison threatened to assert claims against Ocean Bank, and under the terms of the settlement agreement, Harrison would receive $1,000,000 in return for the release of those claims. The FDIC's decision to classify the proposed settlement payments as "golden parachute" payments and to deny Ocean Bank's request for approval of the payments, however, had the effect of voiding the agreement. Harrison contended that the FDIC's decision was "arbitrary, capricious and not in accordance with applicable law," in violation of 5 U.S.C. § 706(2)(A).

The district court (1) granted defendant FDIC's motion for summary judgment, (2) denied plaintiff Harrison's motion for summary judgment, and (3) dismissed Harrison's claims against defendant Ocean Bank. Harrison appeals pro se.

After a review of the record and the parties' briefs, we affirm.

## I. RELEVANT STATUTES AND REGULATIONS

Section 1828(k)(1) of Title 12 of the U.S. Code authorizes the FDIC to "prohibit or limit, by regulation or order, any golden parachute payment or indemnification payment." 12 U.S.C. § 1828(k)(1). Accordingly, the FDIC has generally prohibited banks from making "golden parachute" payments unless the bank first obtains approval for the payment from the bank's primary federal

2

regulator.  See 12 C.F.R. § 359.2 (general prohibition on golden parachute payments); id. § 359.4 (permissible golden parachute payments).

But what is a "golden parachute" payment?  Section 1828(k)(4)(A) defines a "golden parachute" payment, in relevant part, as follows:

> The term "golden parachute payment" means any payment (or any agreement to make any payment) in the nature of compensation by any insured depository institution or covered company for the benefit of any institution-affiliated party pursuant to an obligation of such institution or covered company that—
>
> > (i) is contingent on the termination of such party's affiliation with the institution or covered company; and—
> >
> > (ii) is received on or after the date on which—
> > > . . .
> > > (III) the institution's appropriate Federal banking agency determines that the insured depository institution is in a troubled condition (as defined in the regulations prescribed pursuant to section 1831i(f) of this title).

12 U.S.C. § 1828(k)(4)(A).  An "institution-affiliated party" includes "any director, officer, [or] employee" of the insured bank.  Id. § 1813(u).

Pursuant to 12 U.S.C. § 1828(k), the FDIC has promulgated a regulation in 12 C.F.R. § 359.1(f) that further defines "golden parachute" payments, in relevant part, as follows: (1) "any payment (or any agreement to make any payment)" by an FDIC-insured bank; (2) "in the nature of compensation"; (3) "for the benefit of any current or former" employee; (4) that "[i]s contingent on, or by its terms is payable on or after, the termination" of the employee's employment by the bank; and (5) is

3

or would be received on or after a determination by the FDIC that the insured bank is "in a troubled condition."[1]  12 C.F.R. § 359.1(f)(1).  Under regulation § 359.1(k), a "payment" is further defined as "[a]ny direct or indirect transfer of any funds" and "[t]he conferring of any benefit."  Id. § 359.1(k)(1), (3).

This § 1828(k)(4) statute, as further defined by the § 359.1 regulations, is just one of the numerous restrictions and controls that arises when an insured bank is in a "troubled condition," see, e.g., id. §§ 371.1–371.5 (maintenance of records by banks in a troubled condition); the restrictions are designed to protect the capital of the troubled bank and the regulatory insurance fund.

## II. FACTUAL BACKGROUND

---

[1]The regulation states, in relevant part:

The term golden parachute payment means any payment (or any agreement to make any payment) in the nature of compensation by any insured depository institution or an affiliated depository institution holding company for the benefit of any current or former IAP pursuant to an obligation of such institution or holding company that:

> (i) Is contingent on, or by its terms is payable on or after, the termination of such party's primary employment or affiliation with the institution or holding company; and

> (ii) Is received on or after, or is made in contemplation of, any of the following events:
>> . . .
>> (C) A determination by the insured depository institution's or depository institution holding company's appropriate federal banking agency, respectively, that the insured depository institution or depository institution holding company is in a troubled condition, as defined in the applicable regulations of the appropriate federal banking agency (§ 303.101(c) of this chapter).

12 C.F.R. § 359.1(f)(1).

4

## A.    Harrison's Termination and Settlement Agreement

Harrison served as senior vice president and chief appraiser for Ocean Bank for about a year from October 22, 2007, until October 24, 2008, when the bank involuntarily terminated his employment.[2]  Following his termination, Harrison threatened to file a lawsuit against Ocean Bank, alleging various claims arising out of alleged mistreatment by Ocean Bank and its management during his employment and in connection with his termination.  Specifically, Harrison threatened to assert claims of defamation; intentional infliction of emotional distress; whistleblower retaliation, in violation of state and federal laws; and discrimination, harassment, and retaliation, in violation of state law and Title VII of the Civil Rights Act of 1964.

Although no lawsuit was filed, Harrison and Ocean Bank engaged in pre-suit mediation to avoid litigation costs.  Mediation yielded a settlement agreement signed on March 6, 2009.  Under the terms of the settlement, Ocean Bank agreed to pay Harrison $1,000,000, attributable to Harrison's claimed damages for lost back pay; non-pecuniary compensatory damages for emotional distress, humiliation, and loss of dignity; and attorney's fees.  The sum included $78,000 for "back pay," $589,000 for "alleged compensatory damages," and $333,000 for

---

[2]Harrison was an at-will employee of Ocean Bank and had no written employment agreement with the bank.  Harrison received an annual salary of $150,000, and he collected a $20,000 signing bonus and quarterly bonuses totaling $31,125.

5

"attorney's fees and costs."  The settlement agreement provided that Harrison "acknowledges that these payments are consideration to which he is not already entitled."  The funds were deposited in an interest-bearing escrow account.

In exchange for the settlement payments, Harrison released any and all claims he had against Ocean Bank, including any claims relating to his employment, as well as those claims relating to his termination.  Harrison also agreed that he would "not re-apply for employment or seek reinstatement" at Ocean Bank and that Ocean Bank would have "no obligation to re-employ [him] in the future."

The settlement agreement, however, was conditional.  At the time of Harrison's termination and the execution of the agreement, the FDIC had classified Ocean Bank as being in a "troubled condition," pursuant to 12 C.F.R. § 303.101(c).  As such, Ocean Bank was generally prohibited from making "golden parachute" payments without first obtaining the approval of the FDIC.  See 12 U.S.C. § 1828(k); 12 C.F.R. §§ 359.2 and 359.4(a).  The settlement agreement provided that Harrison and Ocean Bank "understand that this Agreement is subject to approval by the Federal Deposit Insurance Corporation ('FDIC'), as the primary bank regulator of Ocean Bank, and the Florida Office of Financial Regulation ('OFR')."  The agreement further provided that the settlement would "become[ ]

6

null and void without penalty to any party if the Agreement is not approved by the FDIC and the OFR."

On March 16, 2009, Ocean Bank requested approval of the settlement agreement from the FDIC.[3]  In its letter requesting approval from the FDIC, Ocean Bank stated that it "did not believe there was any merit to Harrison's claims" but made "a business decision" to engage in pre-suit mediation and settle the claims. Ocean Bank further stated that, "[a]lthough [it did] not believe that the payments to Harrison under the Settlement Agreement constitute 'golden parachute' payments, in an abundance of caution, [Ocean Bank] made the Settlement Agreement subject to the consent of the FDIC . . . ."

In April 2009, the FDIC informed Ocean Bank that it considered the proposed settlement payments to be "golden parachute" payments, as defined by 12 C.F.R. § 359.1(f).  On October 20, 2009, the FDIC denied Ocean Bank's request for approval of the settlement.  The FDIC reiterated its conclusion that the proposed settlement payments would constitute "golden parachute" payments.  The FDIC, however, did not explain in any more detail why it classified the Ocean Bank payments as "golden parachute" payments under the relevant statute and regulations.  Rather, the FDIC stated that approving the settlement would "set[ ] a

---

[3]On March 16, 2009, Ocean Bank also requested the approval of the OFR.  On March 20, OFR replied to Ocean Bank's request, stating that, because "the settlement payment to Mr. Harrison does not violate any law or regulation which this office is responsible for enforcing, the Office of Financial Regulation takes no position on the payment to Mr. Harrison."

dangerous precedent for settlements should the Bank wish to terminate other employees who have not performed to their expectations."  The FDIC also stated that the "material the Bank provided to support the settlement does not make a compelling case to settle the matter at this time."

## B.    Harrison's First Lawsuit

On January 11, 2010, Harrison filed a two-count lawsuit against Ocean Bank and the FDIC.  Harrison alleged, inter alia, that the FDIC's decision was "arbitrary, capricious, erroneous, and unjustifiable" under the Administrative Procedure Act ("APA"), see 5 U.S.C. § 706(2), because it was "without any analysis or legal justification."

The FDIC and Harrison eventually filed competing motions for summary judgment.[4]  Harrison argued, inter alia, that the FDIC's decision was "arbitrary and capricious" because the FDIC "fail[ed] to provide any rationale, explanation, or justification for its decision" to classify the proposed settlement payments as "golden parachute" payments.  Harrison also contended that the FDIC's conclusion that the proposed settlement payments would constitute "golden parachute" payments was "arbitrary, capricious, erroneous, and contrary to the statutory and

---

[4]While Harrison's first lawsuit was pending—and thus after the FDIC denied Ocean Bank's request for approval of the settlement agreement—Ocean Bank and Harrison agreed to an alternative settlement, in which Harrison would receive $529,000.  On May 19, 2010, Ocean Bank submitted a formal request for the FDIC's approval of the alternative settlement.  The FDIC denied approval of the alternative settlement "for the same reasons that the original Golden Parachute application was denied."

8

regulatory language and intent" because the proposed payments were not "in the nature of compensation," as required by 12 U.S.C. § 1828(k)(4)(A) and 12 C.F.R. § 359.1(f).

On July 23, 2010, the district court granted Harrison's motion for summary judgment, denied the FDIC's motion, and remanded the issue to the FDIC for further proceedings. Specifically, the district court found that the FDIC's decision to classify the proposed settlement payments as "golden parachute" payments "was arbitrary and capricious under the APA for its failure to articulate its reasoning behind the decision."

Because the district court concluded that the FDIC failed to explain its rationale, it did "not address whether the FDIC reached the correct decision in finding that the Settlement Agreement was a golden parachute payment" and thus did not consider Harrison's argument that the proposed settlement payments were not "in the nature of compensation." The district court's order merely remanded the issue to the FDIC for further proceedings, where the FDIC could articulate its reasoning for classifying the payments as such.

## C.    The FDIC's Decision on Remand

On July 30, 2010, one week after the district court remanded the "golden parachute" issue to the FDIC, Ocean Bank sent a letter to the FDIC, requesting that, "[i]n the event that the FDIC again concludes that the settlement payment

9

meets the definition of a '[g]olden [p]arachute' under the regulations," the FDIC

nonetheless approve the settlement.

On August 5, 2010, the FDIC issued a final agency decision denying

approval of the proposed settlement payments.  In that decision, the FDIC again

concluded that the proposed settlement payments would constitute "golden

parachute" payments.  Specifically, the FDIC stated as follows:

> Pursuant to 12 C.F.R. § 359.1(f)(1), any payment payable to a current or former institution-affiliated party ("IAP") on or after the termination of his employment by the institution and received on or after the Bank is in troubled condition is a golden parachute payment. A payment is defined as any direct or indirect transfer of funds and the conferring of any benefit.  12 C.F.R. § 359.1(k)(1) and (2).

The FDIC's decision then applied that definition to Harrison.  It stated that

Harrison was an institution-affiliated party, that Ocean Bank was in troubled

condition, and that "[t]he payment of funds was to be made after Harrison's

termination from the Bank, and is made contingent on his termination."  Turning to

Harrison's argument that the proposed payments were not "in the nature of

compensation," under 12 U.S.C. § 1828(k)(4)(A) and 12 C.F.R. § 359.1(f)(1), the

FDIC decision explained why the settlement payments to Harrison would be "in

the nature of compensation" under the statute and regulations:

> While 12 C.F.R. § 359.1(f)(1) defines a golden parachute payment to be a payment in the "nature of compensation," the term "compensation" was intended to be broadly construed in the regulation.  The payment at issue not only arose out of the employer-employee relationship, but includes elements of back pay, front pay,

10

and "compensatory damages."   All of the proposed amounts are considered to be compensation to Harrison for his termination, and thus constitute compensation for purposes of the regulation.   A payment to avoid litigation that otherwise satisfies the definition of a golden parachute is covered by the regulation.   Some of the central purposes of this regulation are to prevent the improper disposition of institution assets and to protect the financial soundness of insured depository institutions, depository institution holding companies, and the federal deposit insurance fund.   Our decision that the proposed payment to Harrison under the Agreement constitutes a golden parachute payment is consistent with those purposes.

As the district court noted, the FDIC's formal denial letter "finishe[d] with three bullet points on the FDIC's general view of the Settlement's relationship to Ocean Bank's best interests":

> "[T]he total proposed payment of $1,000,000 under the Agreement is excessive in relation to Harrison's compensation, duties, and short tenure at the Bank[.]"

> "[T]he total proposed settlement payment and the amount the Bank would pay directly are significant" and "[t]his amount represents a significant charge to the Bank's already battered earnings and troubled financial position."

> "[T]here has been no demonstration that the payment to Harrison would be a long-term savings to the Bank" and it "might set a dangerous precedent for settlements should the Bank wish to terminate other employees who have no[t] performed to expectations."

Accordingly, the FDIC concluded that the proposed settlement payment "meets all of the terms of the golden parachute definition in 12 C.F.R. § 359.1(f)."

11

As a result of the FDIC's decision, Ocean Bank has not made any payment pursuant to the settlement agreement.[5]  Ocean Bank, however, has kept the funds in the interest-bearing escrow account.

## D.    Harrison's Second Lawsuit

On August 31, 2010, following the FDIC's final decision, Harrison filed this action—a two-count lawsuit against Ocean Bank and the FDIC.  Harrison fashioned Count I as a "Declaratory Judgment of Contract" and sought (1) a declaratory judgment that the proposed settlement payments would not be "golden parachute" payments under 12 C.F.R. § 359.1(f), (2) an order directing the FDIC to approve the payments, (3) an order directing Ocean Bank to release and disburse the escrowed funds, and (4) costs and attorney's fees.  Harrison labeled Count II "Declaratory Relief under APA" and requested the same relief as sought in Count I, except to add a request that the district court declare that the FDIC's decision was "not in accordance with applicable law."

Harrison and the FDIC eventually filed competing motions for summary judgment.  Harrison contended that the FDIC's decision was "arbitrary, capricious and not in accordance with applicable law" because, inter alia, the proposed settlement payments were not "in the nature of compensation."

_____

[5]Because the FDIC also rejected the alternative settlement agreement, see supra note 5, Ocean Bank also has not made any payments to Harrison pursuant to that document.

12

The FDIC argued that the proposed settlement payments were "in the nature of compensation" because "the proposed payment included substantial 'compensation' for claims arising out of his termination of employment, as well as for 'back pay.'"  The FDIC further asserted that the payments were deniable under both the statute and regulations, as follows:

> Harrison cannot plausibly assert that the proposed payment is not "compensation" within the meaning of the regulation.  The FDIC submits that the application would be deniable under the terms of 12 U.S.C. § 1828(k)(4), without even resorting to the definition in Regulation § 359.1(k). . . .
>
> [T]he language of the Settlement Agreement describes the payments as "compensation" and this falls squarely under the FDIC's statutes and regulation.  The back pay component of the settlement cannot possibly be argued not to be "compensation."  Further, the damages were described in the Agreement as "compensatory."

On June 30, 2011, the district court entered an order (1) granting the FDIC's motion for summary judgment and (2) denying Harrison's motion for summary judgment.  The district court found "no evidence that the FDIC's determination was arbitrary or capricious."  Specifically, the district court noted the following:

> In the [August 5, 2010 final agency decision], the FDIC defines payment pursuant to 12 C.F.R. § 359.1(k)(1) and 12 C.F.R. § 359.1(k)(2) as any direct or indirect transfer of any funds and the conferring of any benefit.  The FDIC categorizes Harrison as an institution affiliated party ("IAP") pursuant to the regulation after brief description of his title and length of employment with Ocean Bank. . . .
>
> The FDIC then details its application of the regulation to the termination and resulting Settlement to Harrison.  The FDIC explains

13

its rationale that the term compensation "was intended to be broadly construed in the regulation." It also states that "[a]ll the proposed amounts are considered to be compensation to Harrison for his termination, and thus constitute compensation for purposes of the regulation." The FDIC analysis continues, explaining that it applied the regulation in an attempt [to] follow the central purposes of the regulation as it interprets it.

(Paragraph break added).

The district court also concluded that "the FDIC adequately explained to Harrison the manner in which it applied 12 C.F.R. § 359.1(f) to Harrison's Settlement Agreement and how that application led to it to determine the Agreement to be a golden parachute payment. The FDIC was the agency required to make the determination and in doing so, it provided the rationale for its determination in its letter . . . dated August 5, 2010."

Harrison timely appealed.[6]

### III. STANDARD OF REVIEW

Federal courts review a challenge to an agency decision under the standard set forth by the APA. See 5 U.S.C. § 706; see also Fund for Animals, Inc. v. Rice,

---

[6]In its June 30, 2011 order, the district court did not specify whether Harrison's claims against Ocean Bank survived its order. And the district court's order of final judgment stated that "judgment [was] entered in favor of the Defendant [FDIC] and against Plaintiff [Harrison]." The order of final judgment made no mention of Ocean Bank.

On August 6, 2012, this Court sua sponte dismissed Harrison's initial appeal for lack of jurisdiction because the "district court's June 30, 2011 order [was] not final as to all claims and parties, and the court [had] not entered a certification" pursuant to Rule 54(b) of the Federal Rules of Appellate Procedure. On April 30, 2014, the district court entered an order dismissing all claims against Ocean Bank and an amended final judgment in favor of the FDIC and Ocean Bank. This appeal now follows.

14

85 F.3d 535, 541 (11th Cir. 1996).   The APA provides, in relevant part, that a court shall "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2).  We apply this same standard on appeal that the district court applied below.  See Fund for Animals, 85 F.3d at 541.

## IV. DISCUSSION

As an initial matter, we agree with the district court's thorough analysis as to (1) the FDIC's determination that Harrison was an "institution affiliated party," (2) the FDIC's conclusion that Ocean Bank was in "troubled condition," and (3) the sufficiency of the rationale provided by the FDIC.  As to these issues, Harrison has failed to establish that the FDIC's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  See 5 U.S.C. § 706(2)(A). Thus, to the extent Harrison claims the district court erred on these three points, we conclude that the district court did not err and is due to be affirmed.

Harrison's only argument that requires further consideration is his contention that the proposed settlement payments were not "in the nature of compensation," pursuant to 12 U.S.C. § 1828(k)(4)(A), and thus the FDIC's

15

decision was "not in accordance with law," under 5 U.S.C. § 706(2)(A).  Harrison

contends that the FDIC thus lacked the authority to prohibit those payments.[7]

## A.    Review of Agency Regulations

We begin with the well-settled principle that, "[w]hen Congress has

'explicitly left a gap for an agency to fill, there is an express delegation of

authority to the agency to elucidate a specific provision of the statute by

regulation,' and any ensuing regulation is binding in the courts unless procedurally

defective, arbitrary or capricious in substance, or manifestly contrary to the

statute."  United States v. Mead Corp., 533 U.S. 218, 227, 121 S. Ct. 2164, 2171

(2001) (quoting Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S.

837, 843–44, 104 S. Ct. 2778, 2782 (1984)).

Furthermore, "[a]n agency's interpretation of its own regulations is

'controlling unless plainly erroneous or inconsistent with the regulation.'"  Sierra

Club v. Johnson, 436 F.3d 1269, 1274 (11th Cir. 2006) (quoting Auer v. Robbins,

519 U.S. 452, 461, 117 S. Ct. 905, 911 (1997)).  We offer the same level of

deference to agency interpretations even where an agency interprets terms

concerning the scope of the agency's authority.  See City of Arlington, Tex. v.

F.C.C., 569 U.S. ___, ___, 133 S. Ct. 1863, 1868–69 (2013).

---

[7]All of Harrison's arguments on appeal not otherwise discussed in this opinion are wholly without merit.

16

However, a regulation may be "parroting regulation"—a regulation that uses the same terms as the statute authorizing the agency to issue the regulation. See Gonzales v. Oregon, 546 U.S. 243, 257, 126 S. Ct. 904, 916 (2006). Where a plaintiff challenges an agency's application of a parroting regulation, the question for the courts "is not the meaning of the regulation but the meaning of the statute." Id.

## B.    Regulation § 359.1

The regulatory definition of "golden parachute" payments in § 359.1(f)(1) clarifies the meaning of several statutory terms in 12 U.S.C. § 1828(k)(4). For example, the regulation broadly defines the statutory phrase "institution affiliated party," see 12 U.S.C. § 1828(k)(4)(A), to include "any current or former" employee, see 12 C.F.R. § 359.1(f)(1). In addition, the regulation expansively defines agreements that are "contingent on [an employee's] termination," see 12 U.S.C. § 1828(k)(4)(A)(i), to include any agreement to make a payment that "by its terms is payable on or after" the termination of the employee, see 12 C.F.R. § 359.1(f)(1)(i). Furthermore, the regulation adopts a broad interpretation of the statute's use of the word "termination," see 12 U.S.C. § 1828(k)(4)(A)(i), by specifying that the "termination" of an employee includes the termination of the employee's "primary employment" (and, thus, not necessarily all employment) with the bank, see 12 C.F.R. § 359.1(f)(1)(i).

17

While the regulation itself does not define "in the nature of compensation," the FDIC's decision in this case, in interpreting the statute, returned to the phrase—contained in both the statute and the regulation—and explained that its modifying language—"in the nature of"—meant that "compensation" was to be construed broadly.  In explaining its interpretation, the FDIC relied heavily on the purpose of the statute and the regulation, as noted above:

> Some of the central purposes of this regulation are to prevent the improper disposition of institution assets and to protect the financial soundness of insured depository institutions, depository institution holding companies, and the federal deposit insurance fund. Our decision that the proposed payment to Harrison under the Agreement constitutes a golden parachute payment is consistent with those purposes.

It is debatable here whether interpretation of the phrase—"in the nature of compensation"—remains a question of statutory construction, not a question of interpreting agency regulations with the deference that is due to an agency interpretation.  See Gonzales, 546 U.S. at 257, 126 S. Ct. at 916.  While the regulations do not define that precise phrase, they do provide an expansive reading of other terms surrounding that phrase to provide further context for interpreting "in the nature of compensation."  And there is no requirement that every word in a statute be defined in a regulation for deference to apply.

In any event, whether deference or de novo review is required, we conclude that Harrison has not shown the FDIC's interpretation of "in the nature of

18

compensation" as applied to his specific proposed settlement payments was erroneous. Both the statute § 1828(k)(4) and regulation § 359.1(f)(1) employ the phrase "in the nature of" before the term "compensation." The phrase "in the nature of" signals that the term "compensation" should be construed broadly. Put simply, the settlement agreement purports to pay Harrison $1,000,000 in compensation related to the termination of his affiliation with the bank. The sum includes $78,000 for "back pay," $589,000 for "alleged compensatory damages," and $330,000 for "attorney's fees and costs." These payments are plainly compensatory in nature and relate directly to Harrison's position as senior vice president and chief appraiser at the bank. These payments would not have been offered in the absence of Harrison's termination as an officer and employee of Ocean Bank.

## V. CONCLUSION

For the all the foregoing reasons, we affirm the district court's grant of summary judgment in favor of the FDIC.

**AFFIRMED.**

19