# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-2392

_____

Jerry Von Rohr

*Plaintiff - Appellant*

v.

Reliance Bank; Federal Deposit Insurance Corporation

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 12, 2016
Filed: June 21, 2016

_____

Before GRUENDER and KELLY, Circuit Judges, and ERICKSEN,[1] District Judge.

_____

ERICKSEN, District Judge.

Jerry Von Rohr was an executive at Reliance Bank. After the bank terminated Von Rohr, he requested payment for the one year remaining on his employment

---

[1] The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota, sitting by designation.

contract. The Federal Deposit Insurance Corporation (FDIC) advised that the payment was a prohibited "golden parachute," which the bank could not make without prior agency approval. Von Rohr filed suit against the bank and the FDIC. He alleged a breach of contract under Missouri law and sought a declaration that federal law does not prohibit the payment. The district court[2] upheld the FDIC determination and granted summary judgment to the bank. Von Rohr appeals. We affirm.

## I

For thirteen years, Von Rohr was an executive at the bank, serving initially as chairman, president, and chief executive officer. On June 16, 2011, the bank notified Von Rohr it would not renew his employment agreement when it terminated on September 1, 2011. Von Rohr asserted that his contract did not expire for another year and claimed he was entitled to compensation for that year. The FDIC, in response to an inquiry from the bank, advised that Von Rohr sought a "golden parachute payment," which the bank could not make without prior FDIC approval. The bank declined to make the payment Von Rohr sought.

On February 5, 2013, Von Rohr filed a complaint against the bank and the FDIC. He alleged he was terminated in breach of his contract and sought $405,000 in damages. He also sought a declaration that any payment compensating him for the termination was not prohibited by federal law. At the parties' joint request, the district court stayed the action while Von Rohr applied to the FDIC for a final agency determination as to whether the compensation sought was a prohibited golden parachute under the Federal Deposit Insurance Act, 12 U.S.C. § 1828(k), and the implementing regulations, 12 C.F.R. § 359.1

---

[2] The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

-2-

The Act defines "golden parachute payment" to include "any payment (or any agreement to make any payment) in the nature of compensation by any insured depository institution . . . for the benefit of any institution-affiliated party" (IAP) that is also "contingent on the termination" of the IAP and received when the institution is in "troubled condition." 12 U.S.C. § 1828(k)(4). The regulatory definition largely tracks the statutory definition, except for the contingency clause. While the statute states a golden parachute payment is "contingent on" termination, the regulation states it is "contingent on, or by its terms is payable on or after," termination. 12 C.F.R. § 359.1(f)(1)(i). Once the FDIC determines a payment is a golden parachute, a bank cannot make the payment without FDIC approval. *Id.* at § 303.244. FDIC regulations list the information an application for approval must contain. *Id.* This regulatory scheme prevents troubled banks from draining their already low resources with  payments to terminated executives, who may have been responsible for the bank's condition.

On October 28, 2013, the FDIC determined that Von Rohr was an IAP seeking a golden parachute from a bank in troubled condition. The FDIC's opinion letter concluded: "It is our opinion that, once Von Rohr was terminated, any payments being sought by Von Rohr from Reliance Bank for services he did not render constitute prohibited golden parachute payments under Part 359." The FDIC did not address whether to approve an exception because, as the letter stated, Von Rohr did "not meet even the basic application requirements prescribed."

On May 20, 2014, the district court upheld the FDIC's determination. On May 28, 2015, the district court entered summary judgment for the bank, finding that the FDIC's determination made the bank's performance under the contract impossible. Von Rohr filed a timely appeal challenging the agency action and the grant of summary judgment.

## II

We review *de novo* the district court's decision to uphold the FDIC's determination. *See El Dorado Chemical Co. v. EPA*, 763 F.3d 950, 955 (8th Cir. 2014). A reviewing court must set aside an agency action where it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency action is arbitrary or capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *El Dorado Chemical*, 763 F.3d at 955–56.

## A

Von Rohr first argues the agency determination is not worthy of deference because it is inconsistent with FDIC positions taken elsewhere. The Supreme Court has stated that deference is unwarranted where the agency's interpretation does not reflect the agency's "fair and considered judgment," which "might occur when the agency's interpretation conflicts with a prior interpretation." *Christopher v. SmithKline Beecham Corp.*, 132 S.Ct. 2156, 2166 (2012).

Von Rohr points to two documents that he claims reveal inconsistencies. First, he cites to a footnote in an FDIC guidance document stating that golden parachute restrictions "do not apply to the payment of salaries or bonuses." The FDIC's action, though, accords with this statement. The agency's letter barred post-termination payments to Von Rohr "for services he did not render." Nothing in the FDIC's opinion prevented Von Rohr from receiving salary and bonuses owed to him for work he had performed.

-4-

Von Rohr also cites to the FDIC's position in *Harrison v. Ocean Bank*, 614 F. App'x 429 (11th Cir. 2015). In *Harrison*, a bank in troubled condition terminated an executive, who threatened to sue for discrimination and whistleblower retaliation, among other claims. *Id.* at 432. Though no suit was filed, the bank agreed to a $1 million settlement, subject to FDIC approval. *Id.* The FDIC determined the settlement was a golden parachute and did not approve an exception. *Id.* at 433. The district court upheld the FDIC. *Id.* at 435-36. On appeal to the Eleventh Circuit Court of Appeals, the FDIC stated in a footnote that "[a]ffirmance would not preclude terminated IAPs such as Harrison from litigating in court the merits of their claims."

Von Rohr argues this footnote is at odds with the FDIC's position limiting his ability to litigate his claim. However, *Harrison* involved statutory claims, while Von Rohr brought only a contract claim. The agency has consistently held that section 1828(k) does not preclude payment of damages for statutory claims. It has not taken the same position with regard to contract claims. As discussed in the next section, the agency's distinction between statutory and contract claims is reasonable.

There is also some discussion in the briefs about whether to extend *Chevron* and *Auer* deference to the agency. *Chevron* deference applies when an agency interprets ambiguous language in its enabling statute. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Auer* deference applies when an agency interprets ambiguous language in its own regulation. *Auer v. Robbins*, 519 U.S. 452 (1997). As discussed below, the outcome in this matter hinges on the definition of "contingent." The FDIC relies on the dictionary meaning of the word. *Black's Law Dictionary* defines "contingent" to mean: "Dependent on something that might or might not happen in the future; conditional." (10th ed. 2014). Because the agency treats the word as unambiguous and relies on its dictionary meaning, the issue of *Chevron* and *Auer* deference is irrelevant. We simply rely on the word's common and dictionary meaning too.

**B**

Von Rohr challenges the agency determination that he seeks payment "contingent on" his termination, as necessary to meet the definition of "golden parachute payment" in section 1828(k). He concedes the payment otherwise satisfies the statutory definition.

Von Rohr argues the payment is not contingent on termination because he would have received the same amount if he had worked for the one year left on his contract instead of being terminated. Von Rohr might be correct that the contract contemplated two ways he could become entitled to the same amount. But this does not mean the agency determination was arbitrary. One could reasonably characterize the payment obligation as contingent on either Von Rohr's termination or his continued employment. If a third event occurred, such as Von Rohr choosing to quit, the obligation would not arise.[3] Von Rohr alleged the bank came to owe the payment because of his termination, not because of services he rendered. The agency therefore determined the payment was contingent on termination. We cannot find that this determination was arbitrary or capricious.

Von Rohr argues the FDIC should regulate only those arrangements that specifically contemplate compensation solely in the event of termination. Von Rohr's approach, though, would create a giant loophole. Banks and executives could structure their agreements to allow for post-termination payments that would function as golden parachutes but avoid the magic words triggering the FDIC's regulations.

---

[3] Von Rohr's employment agreement states that, if Von Rohr, without consent, shall "cease to render services as required by this Agreement . . ., he will thereby relinquish all rights to any benefits hereunder, including future salary payments."

Von Rohr cites to *Sterling Savings Bank v. Stanley*, No. 12-cv-214, 2012 WL 3643679 (E.D. Wa. Aug. 23, 2012), where the court found that golden parachute restrictions did not preclude a terminated bank executive from recovering damages in her discrimination suit against her former employer. *Id.* at *3. Like the court in *Sterling Savings*, the FDIC takes the position that Congress did not intend the golden parachute rules to preclude damages based on discrimination or other statutory claims. Von Rohr's case is different, though, because Von Rohr brought a contract and not a statutory claim. The FDIC's letter specifically distinguished *Sterling Savings* on this basis.

The FDIC's distinction between contract and statutory claims is sensible given the statutory language. Section 1828(k) authorizes the FDIC to "prohibit or limit . . . any golden parachute payment," including "any agreement to make any [golden parachute] payment." 12 U.S.C. §§ 1828(k)(1), (4)(A). When a terminated bank executive sues for breach of contract, the basis of his claim is an agreement, which the FDIC is authorized to restrict to prevent golden parachute payments. By contrast, when the basis of the claim is a statute, the FDIC does not have the same authority because section 1828(k) does not expressly authorize the FDIC to restrict bank employees' statutory protections.[4]

Von Rohr advances several other grounds for questioning the agency action, each of which is unavailing. First, he argues the agency misinterpreted the "by its terms is payable on or after" termination language in the regulatory contingency clause. However, the Court need not examine this language because the FDIC's decision does not hinge on it. The "contingent on" termination language, which is in

---

[4] Von Rohr's argument that the *Sterling Savings* court did not distinguish between contract and statutory claims is irrelevant. The FDIC has made the distinction, and it is the FDIC's reasoning that is under review.

both the statute and the regulation, does all the work necessary to support the agency's determination.

Second, Von Rohr argues the FDIC has no authority to deprive him of his vested compensation rights. He cites to a case in which the court held a bank executive was entitled to retirement benefits that had vested at the time of FDIC receivership. *See McCarron v. FDIC*, 111 F.3d 1089, 1098 (3d Cir. 1997). Von Rohr, though, does not seek vested retirement benefits or any other type of vested benefit excluded from the statute. *See* 12 U.S.C. § 1828(k)(4)(C) (defining "golden parachute payment" to exclude payments pursuant to qualified retirement plans, other nondiscriminatory benefit plans, and certain bona fide deferred compensation plans).

Finally, Von Rohr attacks the FDIC for disregarding the common meaning of golden parachute payment. However, because the term is given a specific definition in the statute, the common meaning is irrelevant. The agency is bound to follow the statutory definition. *See Perrin v. United States*, 444 U.S. 37, 42 (1979). The agency's determination as to Von Rohr is a reasonable application of this statutory language.

### III

We review *de novo* the district court's decision to grant summary judgment. *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078 (8th Cir. 2008). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Wingate*, 528 F.3d at 1078-79. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient;

there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Under Missouri law, "[i]f a party, by contract, is obligated to a performance that is possible to be performed, the party must make good unless performance is rendered impossible by an Act of God, the law, or the other party." *Farmers' Elec. Co-op., Inc. v. Missouri Dep't of Corr.*, 977 S.W.2d 266, 271 (Mo. banc 1998). Here, the bank's obligation to pay Von Rohr was rendered impossible when the FDIC determined the payment was a golden parachute.

Either Von Rohr or the bank could have attempted to render the golden parachute payment possible by applying for an exception. FDIC regulations allow banks or IAPs to apply for approval of a golden parachute payment. 12 C.F.R. § 359.4(a)(4). The parties signed a joint motion to stay the district court action to allow Von Rohr to "submit a written application covering all of the issues concerning which Von Rohr seeks a decision from the FDIC concerning the payment." However, Von Rohr failed to meet the basic application requirements for an exception.[5] As a result, the FDIC never decided whether to approve an exception. If Von Rohr had submitted a proper application and the agency had declined to grant an exception, Von Rohr could have sought judicial review of that decision. But, having failed to initiate the process with the agency, Von Rohr cannot now ask the Court to examine whether he should receive an exception.

---

[5] Von Rohr argues that, without the bank's help, he could not satisfy the requirement that his application state the "cost of the proposed payment and its impact on the institution's capital and earnings." 12 C.F.R. § 303.244(c)(4). However, the amount sought is specified in his complaint, and details on the bank's finances are publicly available.

Even though the bank remains barred from making the payment, Von Rohr argues the bank lost its ability to rely on the impossibility defense when it failed to submit its own application for FDIC approval. Von Rohr cites to the doctrine that a party relying on the impossibility defense must demonstrate "it took virtually every action within its powers to perform its duties under the contract." *Farmers' Elec.*, 977 S.W.2d at 271.

The bank maintains it did not apply because it could not meet the requirement that an applicant certify "it does not possess and is not aware of any information, evidence, documents or other materials which would indicate that there is a reasonable basis to believe . . . [t]he IAP is substantially responsible for . . . the troubled condition." 12 C.F.R. § 359.4(a)(4)(ii). The bank cites to an October 3, 2011 letter to Von Rohr from the bank's chairman and CEO, Allan Ivie. The letter states that the bank's Board of Directors' reasons for termination include "the opinion that your leadership was significantly responsible for the Bank's current financial condition." The record also contains a declaration from Ivie stating the bank will not make the certification "[a]s a result of this October 3, 2011 letter, and the information upon which it is based."

Von Rohr suggests the October 3, 2011 letter is unsupported hearsay. However, the letter was not admitted to prove the truth of the matter. It was admitted to show the bank possesses a document preventing it from making the necessary certification. Von Rohr also asserts the bank has not shown Von Rohr was responsible for the bank's troubled condition. However, the relevant issue is not whether he was in fact responsible but whether the bank can certify it does not possess information giving it a reasonable basis to believe Von Rohr was substantially responsible. Von Rohr failed to create a genuine dispute on this issue. Von Rohr did not ask for or conduct any discovery, and he did not submit any evidence to rebut the bank's evidence showing it could not make the certification.

-10-

Finally, Von Rohr argues the FDIC action did not preempt, and thus did not render fully impossible, the state breach of contract claim. Von Rohr elides two separate defenses: the contract defense of impossibility and the federal preemption of state law. Application of the impossibility defense does not require a finding of federal preemption.[6]

**IV**

Accordingly, we affirm the district court.

————————————————————

---

[6] We offer no opinion on the applicability of a conflict preemption defense, an issue that was not addressed by the district court.